Robert N. ALDAY, Individually, and on behalf of all participants in the Container Corp. of America Salaried Retiree Health Insurance Program as of December 31, 1989, Plaintiffs–Appellants,

v.

CONTAINER CORPORATION OF AMERICA, The Jefferson Smurfit Corporation, Smurfit Pension and Insurance Co., Defendants–Appellees.

No. 89–3476.

United States Court of Appeals, Eleventh Circuit.

July 24, 1990.

---

John F. MacLennan, Jacksonville, Fla., Marvin J. Lewis, Collegeville, Pa., for plaintiffs-appellants.

William S. Burns, Jr., Jacksonville, Fla., Columbus R. Ganegmi, Jr., William G. Miossi, Kathleen McCarthy Binning, Richard H. Winters, Chicago, Ill., for defendants-appellees.

Before KRAVITCH, Circuit Judge, RONEY*, and ALDISERT**, Senior Circuit Judges.

KRAVITCH, Circuit Judge:

Plaintiff Robert N. Alday, individually and as the representative of a class of approximately one thousand participants in

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Ruggero J. Aldisert, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

a retiree health insurance program, brought suit against the Container Corporation of America ("CCA"), the Jefferson Smurfit Corporation ("JSC"), and Smurfit Pension and Insurance Company ("SPI").[1] Alday challenged CCA's decision, effective January 1, 1987, to modify the benefits and premiums of CCA's salaried retiree medical insurance plan on the grounds that such modifications were improper and should be set aside. The district court, after certifying only certain of Alday's claims for the class, granted summary judgment in favor of the defendants. Alday appeals the denial of class certification on one of his claims and the district court's grant of summary judgment.

## BACKGROUND

CCA has maintained a health insurance plan for retired employees since 1964. In 1976, that plan was changed significantly. The plan's benefits were increased and employees who elected to participate were required to pay for some of the plan's cost.

In accordance with the requirements of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA"), the terms of the 1976 plan were described in a formal written document and were communicated to employees by means of a document called a "summary plan description ("SPD").[2] A participating employee's monthly contributions to the plan began upon retirement. The plan documents did not specify a dollar amount for the employee's contributions, but stated instead in the Schedule of Benefits that contributions

would be "as required by the plan."[3] In addition, the plan documents also expressly provided that plan administrators reserved the right to "terminate, suspend, withdraw, amend or modify the Plan in whole or part at any time."

When the plan went into effect in 1976, employees were informed by a letter from the chief executive that participants were required to contribute $20 per month for each employee and spouse under the age of 65 and $8 per month for each employee and spouse age 65 and over.[4] The initial letter describing the program noted that these costs could increase at a future date, and that in the event of a cost increase, employees had the option of continuing at the new cost or cancelling their coverage.

Subsequently, the plan was modified several times in minor ways. Each modification was described in a revised SPD, which also included the language pertaining to the right to modify or terminate quoted above. The SPD's were not generally distributed to employees prior to their retirement,[5] although both sides agree that SPD's were available upon request.

Beginning in 1977, CCA distributed annually to employees a booklet entitled "Summary of Personal Benefits," which set forth the various employee benefit plans offered by CCA, and provided an individualized calculation of the pension and stock bonus plan accruals earned by the employee to date. Under the heading "Health and Dental Plans," the booklet stated that upon retirement "[h]ealth insurance [is] available

---

1. JSC, which currently owns 50% of CCA's stock, exercises managerial control over CCA, including management of the company's employee benefits. SPI provides consulting services to Jefferson Smurfit of which it is a subsidiary.

2. 29 U.S.C. § 1102(a)(1) states in part that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1022 provides that "[a] summary plan description shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title." Apparently, CCA's formal written document and the SPD were identical.

3. Later SPD's, such as the 1979 SPD, provided that "[t]he health insurance under this plan is

on a contributory basis requiring contributions from you toward its costs." The 1986 SPD also provided that "[t]he Employee's contribution is a fixed monthly rate as determined from time to time."

4. The lower monthly contributions for retired employees age 65 and older reflects the fact that such employees are also eligible for benefits under Medicare.

5. According to an affidavit of Harold F. Fendius, former Manager of Employee Benefits Planning at CCA, the SPD's were normally sent to CCA employees around the time of their retirement date, accompanied by an enrollment card.

to you and your dependents at a modest cost. Dental coverage ends." The booklet did not set forth any other details about the health benefit program, nor did it state that CCA retained the right to terminate or modify the health insurance available to the retiree. The booklet did note, however, that any discrepancy between its contents and those of the formal plan documents would be governed by the terms of the plan documents.

When an employee neared retirement, pre-retirement planning seminars were held and a series of correspondence ensued between CCA and the employee. Included in this correspondence were form letters about the benefit options, enrollment cards, and a copy of the current SPD. One of the form letters stated the amount that retired employees were required to contribute for health insurance coverage. The form letters did not state that the health insurance benefits could be terminated or modified. The written materials accompanying the planning seminars also made no statements regarding CCA's right to terminate or modify coverage.

On January 1, 1987, CCA modified the benefits and substantially raised the employee contributions of its retiree health insurance plan.[6] Beginning on that date, CCA salaried retirees under age 65 were required to contribute $56.21 for themselves and $92.45 for dependent coverage, while retirees age 65 and older were charged $54.81 for themselves and $54.81 for dependents. The maximum lifetime benefits available under the plan were also reduced at that time.

Alday brought this action on behalf of himself and all similarly situated employees[7] against CCA, its parent company JSC, and its pension consultant SPI. Alday and the class alleged that the modification of the plan in 1987 violated ERISA and breached the defendants' fiduciary duty to the plaintiffs. Alday also alleged that the defendants were estopped from altering the terms of the plan because they had induced him into believing that the plan's terms would not change, and he relied upon that representation. The court refused to certify the promissory estoppel issue for the class, finding that it did not satisfy the requirements of Fed.R.Civ.P. 23(a). After the district court granted summary judgment for the defendants on all claims, this appeal ensued.

## I.

■ Alday puts forth several arguments as to why the district court erred in granting summary judgment for the defendant on his claim that the January 1, 1987 modifications to the plan were not permissible under ERISA. One argument Alday cannot make is that, regardless of the plan's language, he had vested rights to the defendants' health insurance plan under ERISA. This argument is foreclosed by the fact that the retiree health insurance plan is a welfare benefit plan under 29 U.S.C. § 1002(1) and not a pension plan under 29 U.S.C. § 1002(2). Pension plans are strictly regulated by ERISA and are subject to ERISA's vesting, participation, and minimum funding requirements. Welfare benefit plans, which are benefits such as medical insurance that may be ancillary to but are not part of a pension plan, are not subject to these requirements. See 29 U.S.C. §§ 1051 et seq. & §§ 1081 et seq.[8]

---

**6.** These changes followed the sale of CCA to Jefferson Smurfit Corporation and the accompanying changeover in CCA's management.

**7.** The class was composed of all CCA retirees who were participating in the plan prior to the 1987 modifications.

**8.** In *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488 (2d Cir.1988), the Second Circuit noted that:
> With regard to an employer's right to change medical plans, Congress evidenced its recognition of the need for flexibility in rejecting the

automatic vesting of welfare plans. Automatic vesting was rejected because the costs of such plans are subject to fluctuating and unpredictable variables. Actuarial decisions concerning fixed annuities are based on fairly stable data, and vesting is appropriate. In contrast, medical insurance must take account of inflation, changes in medical practice and technology and increases in the costs of treatment depending on inflation. These unstable variables prevent accurate predictions of future needs and costs. *Id.* at 492.

**664**

■ Instead of arguing that ERISA mandates the vesting of his welfare benefits, Alday argues that under *pre-ERISA* law, a retired employee's rights to health benefits were vested at the time of retirement, and that the right reserved by CCA in the plan documents to modify or terminate the plan cannot be applied to affect his rights. His main argument is that the Supreme Court's recent decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) effectively overrules all decisions which interpret ERISA to provide less protection to retirees than would have been available to them under the pre-ERISA common law jurisprudence on pensions.

We conclude that Alday's reading of *Bruch* is erroneous, and that the case has no bearing on the facts before us. In *Bruch*, the question before the Court was the appropriate standard to be used by courts of appeals in reviewing actions under 29 U.S.C. § 1132(a)(1)(B) challenging denials of benefits based on plan interpretations. The Supreme Court rejected the "arbitrary and capricious" standard of review used by the majority of the courts of appeals and held that a denial of benefits is to be reviewed by appellate courts de novo.[9] In reaching this result, the Court noted that ERISA served to make applicable to fiduciaries administering benefit plans certain principles developed in the law of trusts. It found that "[t]he trust law *de novo* standard of review is consistent with the judicial interpretation of employee benefit plans prior to the enactment of ERISA." 489 U.S. at ——, 109 S.Ct. at 955. The Court reasoned that because "ERISA was enacted 'to promote the interests of employees and beneficiaries in employee benefit plans,' and 'to protect contractually defined benefits' " *id.* (citations omitted), it would be anomalous to apply a standard of review that would afford "less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." *Id.* 109 S.Ct. at 956.

Alday seizes upon the Supreme Court's reasoning in *Bruch* to support his contention that ERISA can never be construed in a manner that would provide less protection to employees than they would receive under the common law. He states that had the claims he presents arisen under pre-ERISA law, he would have been entitled to recover, as he and the other class members had rendered the services required by CCA and were therefore entitled to the vesting of medical benefits with unchangeable employee contributions.

It is unnecessary for us to decide whether Alday would have been entitled to recover under pre-ERISA law,[10] because we find that *Bruch* in no way mandates such an inquiry. It is clear that ERISA preempts state common law causes of action relating to benefit plans,[11] and in many respects, ERISA purposefully displaced the common law by imposing express requirements on employers and pension plans.[12] While *Bruch* suggests that the ERISA policy of protecting plan beneficiaries should be con-

9. The Court made clear, however, that de novo review is not required in cases where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at ——, 109 S.Ct. at 956.

10. Alday has provided little support for the proposition that under pre-ERISA law, CCA would have been prohibited from modifying the terms of the retirees health insurance plan. Alday cites to several pre-ERISA cases in which the courts have held that once an employee has complied with the conditions of employment, his pension rights become vested, and the employer cannot divest the employee of his rights notwithstanding a proviso in the contract of employment to the contrary. *See, e.g., Rochester Corp. v. Rochester*, 450 F.2d 118 (4th Cir.

1971); *Hoefel v. Atlas Tack Corp.*, 581 F.2d 1 (1st Cir.1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979). Of the cases cited, however, only one, *Sheehy v. Seilon, Inc.*, 10 Ohio St.2d 242, 227 N.E.2d 229, 230 (1967) involved a claim by retired employees regarding health insurance. The others involved pension plans, which, even under ERISA, are subject to vesting requirements.

11. *See* 29 U.S.C. § 1144(a); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1470 (11th Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).

12. One such requirement is that the terms of a plan be contained in a formal written document and an SPD. *See* 29 U.S.C. § 1102(a)(1).

sidered when evaluating claims that are not addressed by the explicit language of the statute, the opinion in no way invalidates welfare benefit plans that comport with ERISA's requirements, but reserve certain rights to the plan fiduciary.

## II.

◾ In addition to his broad attack on the validity of the plan on the basis of *Bruch,* Alday also claims that in reviewing the terms of the plan itself, the district court erred in refusing to consider communications between CCA and its employees other than the formal plan documents. As noted above, ERISA requires that welfare benefit plans be governed by written plan documents which are to be prepared and filed in compliance with ERISA's reporting and disclosure requirements. The SPD is the statutorily established means of informing participants of the terms of the plan and its benefits. *See* 29 U.S.C. §§ 1022(a) & 1102; 29 C.F.R. § 2520.102–2. Accordingly, any retiree's right to lifetime medical benefits at a particular cost can only be found if it is established by contract under the terms of the ERISA-governed benefit plan document. *See Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988). Here, the SPD clearly provides that the retiree health insurance plan may be terminated or modified. No basis can be found in the language of the plan documents to contradict CCA's reservation of the right to amend or even terminate the plan at any time.

◾ Alday does not argue that the language of the SPD is ambiguous, but claims that certain communications between CCA and its employees contradicted that language and that those communications are controlling. In particular, he points to the Summary of Personal Benefits booklet, letters sent to employees nearing retirement,

and documents accompanying retirement seminars. None of these communications informed employees of CCA's right to terminate or discontinue the plan.

In *Nachwalter v. Christie,* this court stated that oral representations or promises cannot modify the clear terms of an employee benefit plan. 805 F.2d 956 (11th Cir.1986).[13] Although *Nachwalter* involved only oral representations, the court based its holding on the fact that Congress expressly prohibited informal *written* amendments of ERISA plans under 29 U.S.C. § 1102(b)(3). The court stated that:

ERISA requires that each plan shall "provide a procedure for amending such a plan, and for identifying the persons who have the authority to amend the plan." 29 U.S.C. § 1102(b)(3). By explicitly requiring that each plan specify the amendment procedures, Congress rejected the use of informal written agreements to modify an ERISA plan.

*Id.* at 960.

Our holding in *Nachwalter* is controlling in this case and Alday's attempts to distinguish that decision are unavailing. Alday first argues that this situation is different from that presented in *Nachwalter* because the Summary of Personal Benefits booklet distributed to CCA employees was not an "informal" communication but was instead an "official document." In fact, Alday states that this document is sufficiently formal to be construed as a "plan document." It is clear, however, that the booklet does not fulfill the requirements for plan descriptions and summary plan descriptions as set out at 29 U.S.C. § 1022. The booklet does not describe the plan's terms, specify its benefits or coverage, or define eligibility requirements or limitations. It fails to give plan participants any of the information they would need in order to participate in CCA's program for retiree health insurance.[14] The pre-retirement let-

---

**13.** In addition to the Eleventh Circuit, the Second, Fifth, Sixth and Seventh Circuits have also concluded that ERISA precludes oral modification of benefit plans. *See Moore,* 856 F.2d 488; *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1295–97 (5th Cir.1989); *Musto v. American General Corp.,* 861 F.2d 897 (6th Cir.1988), *cert.*

*denied,* —— U.S. ——, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Central States, S.E. & S.W. v. Gerber Truck Service, Inc.,* 870 F.2d 1148, 1149 (7th Cir.1989).

**14.** Alday points to *Kochendorfer v. Rockdale Sash & Trim Co.,* 653 F.Supp. 612 (N.D.Ill.1987) for the proposition that "any document a plan

ters likewise do not in any way constitute plan documents.

Alday points to cases in which the courts have found documents other than the SPD to constitute ERISA plan documents, *see In re White Farm Equipment Co.*, 788 F.2d 1186, 1193 (6th Cir.1986); *Eardman v. Bethlehem Steel Corp. Employee Welfare Benefit Plans*, 607 F.Supp. 196 (W.D.N.Y. 1984); *Myron v. Trust Company Bank Long Term Disability Benefit Plan*, 522 F.Supp. 511, 516–18 (N.D.Ga.1981), *aff'd*, 691 F.2d 510 (11th Cir.1982), *cert. denied*, 462 U.S. 1119, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983), and cases in which courts have looked to documents other than the ERISA plan documents to determine the intentions of the parties. *See Bower v. Bunker Hill Company*, 725 F.2d 1221, 1224 (9th Cir. 1984); *Myron*, 522 F.Supp. at 519. These cases are easily distinguishable from the instant case. In *White Farm* and *Myron*, there was either no SPD or formal plan document, or there was confusion as to what documents constituted the plan. In *Bower* and *Eardman*, the formal plan documents did not unambiguously reserve the right to terminate or modify the plan.

Here, in contrast, there was an SPD which clearly functioned as the plan document required by ERISA. Moreover, the SPD unambiguously set out the rights of the parties, including CCA's right to terminate or modify the plan. Accordingly, there is no need to refer to other communications between the parties to determine the parties' intent. Thus, under *Nachwalter*, the terms of the SPD are controlling and other documents must be ignored.[15]

distributes to plan participants which contains all or substantially all of the information the average participant would deem crucial to a knowledgeable understanding of his benefits under the plan shall be deemed a summary plan description." *Id.* at 615. Without endorsing the holding in *Kochendorfer*, we note that the passing reference to retiree health insurance in CCA's booklet as "available to you and your dependents at a modest cost" hardly reaches the level of specificity required by the *Kochendorfer* court.

## III.

■ Alday asserts that the district court's entry of summary judgment on his theory of promissory estoppel was error. In *Nachwalter*, after recognizing that state common law claims such as estoppel are preempted by ERISA, the Eleventh Circuit explicitly held that there was no federal common law right to promissory estoppel under ERISA in cases involving oral amendments to or modifications of employee plans governed by ERISA because ERISA specifically addresses these issues. 805 F.2d at 960.

In *Kane v. Aetna Life Ins.*, 893 F.2d 1283 (11th Cir.1990), this court further clarified the scope of the holding in *Nachwalter*. In *Kane*, the court differentiated between oral amendments or modifications to a plan and oral *interpretations* of a plan. It held that the federal common law claim of equitable estoppel may be applied where (a) the provisions of the plan at issue are ambiguous such that reasonable persons could disagree as to their meaning or effect, and (b) representations are made to the employee involving an oral interpretation of the plan. *Id.* at 1286–87. Despite Alday's assertions to the contrary, we find that the holding in *Kane* has no bearing on the case before us. First, *Kane* only comes into play when the terms of a plan are ambiguous. In addition, equitable estoppel may only be used where the communications constituted an interpretation of that ambiguity. As neither of these prerequisites existed in the instant case, *Nachwalter* remains controlling and precludes a plan challenge premised on estoppel.

15. We note that our holding does not insulate from liability a fiduciary who makes fraudulent promises in informal communications that deceive employees and contradict the terms of the SPD. In such a case, there may be valid reasons for a court to look beyond the unambiguous language of the SPD in interpreting the plan.

Here, Alday makes no allegations of fraud on the part of CCA. Moreover, none of the documents relied on by Alday in any way contradict the SPD, but merely fail to include language concerning CCA's right to modify or terminate the plan.

### IV.

Alday's final claim is that the trial court erred in denying class certification on his estoppel claim. Having determined that a promissory estoppel theory is not available to Alday, it is immaterial that the other employees were not joined in the class. Accordingly, the order denying class certification is AFFIRMED.

Because we find that there are no material facts in dispute and that the district court correctly applied the law to the facts in the record, the district court's order granting summary judgment in favor of the defendants is AFFIRMED.