**Fred T. MILLER, Plaintiff,**

v.

**PENSION PLAN FOR EMPLOYEES OF the COASTAL CORPORATION; the Coastal Corporation, A Delaware Corporation, Defendants.**

No. 89–1431.

United States District Court,
D. Kansas.

Dec. 31, 1991.

Robert W. Kaplan, Kaplan & McMillan, Wichita, Kan., for plaintiff.

Charles P. Efflandt, Foulston & Siefkin, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendants' motion for summary judgment. Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(1)(B), to recover certain pension plan benefits under the Pension Plan for Employees of the Coastal Corporation. Plaintiff's theory of recovery is based not on the terms of the written pension plan but on certain oral and written representations made to him. The court denies the plaintiff's request for oral argument as the court is able to comprehend the parties' respective positions on the central issues from their briefs.

A motion for summary judgment gives the judge an initial opportunity to assess the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

On pages three through twelve of the pretrial order, the parties have stipulated to most of the facts pertinent to this motion. In the interest of brevity, the court

will adopt those stipulations and set out herein a factual summary of them.

Plaintiff Fred T. Miller was employed at the Derby Refinery from December 4, 1950, through January 1, 1989. Over his years of employment, plaintiff participated in several different pension plans. Plaintiff was hired by Derby Oil Company as an hourly employee and participated in a pension benefit plan funded through Minnesota Mutual Life Insurance.

Colorado Interstate Gas Company purchased Derby Oil Company on October 1, 1955. Around the same time, plaintiff requested and obtained his accrued benefits from Minnesota Mutual. Plaintiff's claim in this case does not include any of these benefits accrued up to 1955 and distributed to him.

As of October 1, 1955, plaintiff was an hourly employee participating in and accruing benefits from Colorado Oil & Gas Retirement Plan. This continued until the plan was restated and named "CIC Industries, Inc. Retirement Plan," in August of 1968. Plaintiff accrued benefits under the renamed plan through December 31, 1968.

CIC Industries, Inc., which then owned Derby Refinery, amended and restated, effective January 1, 1969, this plan establishing a separate plan for hourly employees within the collective bargaining unit and giving it the name of "Derby Refining Company Pension Plan." Plaintiff participated in this hourly union plan through April 15, 1974.

Defendant Coastal Corporation acquired the Derby Refinery in 1973. In July of that year, Coastal Corporation merged the non-union CIC pension plan into its predecessor to the Pension Plan for Employees of the Coastal Corporation. There was no merger of the Derby Refining Company Pension Plan in which the plaintiff was a participant.

In April of 1974, plaintiff was promoted from his union hourly position to the non-union salaried position of Assistant Operating Superintendent at Derby Refinery. With this promotion, plaintiff stopped participating in the Derby Refining Company Pension Plan and began participating in the predecessor to the Pension Plan for Employees of the Coastal Corporation. Plaintiff accrued benefits under this latter plan until his retirement effective January 1, 1989.

The Pension Plan for Employees of the Coastal Corporation specifies a benefit formula for the calculation of a participant's retirement benefits. A factor in this formula is the participant's years of "credited service." This factor was defined in the plan to include in some instances those years of service with the company prior to its acquisition by Coastal Corporation. Immediately prior to Coastal Corporation's acquisition of CIC Industries, Inc., plaintiff was not a participant in a qualified pension plan of CIC Industries, Inc.

Plaintiff filed a formal claim for benefits under the plan on December 7, 1988. Administration of the Coastal Corporation Plan is delegated to the Administrative Committee. The Committee decided that plaintiff's "credited service" included only those years, April of 1974 to his retirement, that he was a salaried employee with Coastal Corporation at the Derby Refinery. Consequently, plaintiff's benefits for the years running from October of 1955 through April of 1974 were calculated at the lower amounts found in the Derby Refining Company Pension Plan rather than the higher amounts provided in the Coastal Corporation Plan.

The plaintiff received annual benefit statements concerning his benefits under the Coastal Corporation Plan. Attached to one or more of these benefit statements was the following:

The information shown in this statement is based on personal information in effect at the time the report was prepared and on various assumptions as to future events. While great care has been taken in developing this information it may, in some cases, be subject to inaccuracies in the accumulation of data or in calculations. In the event of a discrepancy between the information contained in this statement and the plan document, the latter will govern.

Plaintiff seeks to recover those pension benefits that he would have recovered had all of his years of employment at Derby Refining Company, beginning in October of 1955, been treated as credited service under the Coastal Corporation Plan. He alleges that upon his promotion in April of 1974 he was told his prior service would be computed as if he had been salaried employee throughout his employment at Derby Refining Company. From 1975 through 1984, with the exception of 1983, plaintiff received annual benefit statements from the Coastal Corporation Plan which showed benefits being computed consistent with the prior oral representation. On these allegations, plaintiff bases three legal theories for recovery. The oral representation and benefit statements created a contractual obligation on Coastal Corporation to pay those pension benefits, and this duty was breached with the denial of plaintiff's claim. Because of these representations, Coastal Corporation is equitably estopped from denying these benefits and the plaintiff detrimentally relied upon them.

Defendants advance three issues in support of their motion for summary judgment. Whether defendants are liable under ERISA for the pension benefits claimed on the basis of certain alleged oral and non-plan written representations made to plaintiff? Whether recovery of these benefits is available under some theory of federal common law? Finally, whether Coastal Corporation is a proper party in this action to recover pension plan benefits under ERISA, 29 U.S.C. § 1132? The court will combine its discussion of the first two issues.

## MODIFICATION OF THE WRITTEN PLAN AND FEDERAL COMMON LAW

■ A person may bring an action under ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This provision basically recognizes an ERISA "breach of contract" action. *Pratt v. Petroleum Prod. Mngmt.*

*Employee Sav. Plan,* 920 F.2d 651, 658 (10th Cir.1990). "Every employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Plaintiff's claim is based not on any written term of the Coastal Corporation Plan but on oral representations and non-plan written benefit statements. Consequently, the defendants are correct in their argument that the success of plaintiff's ERISA claim turns first upon whether the written plan may be modified by oral or non-plan written representations.

In *Straub v. Western Union Telegraph Co.,* 851 F.2d 1262, 1265 (10th Cir.1988), the Tenth Circuit held "that no liability exists under ERISA for purported oral modifications of the terms of an employee benefit plan." In support of its holding, the Tenth Circuit cited the Eleventh Circuit decision of *Nachwalter v. Christie,* 805 F.2d 956, 959–61 (11th Cir.1986), and quoted the following: " '[T]his requirement that ERISA plans be 'maintained' in writing precludes oral modifications of the Plans; the common law doctrine of estoppel cannot be used to alter this result.' " 851 F.2d at 1265.

■ ERISA preempts all state common-law claims relating to employee benefit plans. 29 U.S.C. § 1144(a). Federal courts are vested with the power, however, to develop a body of federal common law addressing the rights and obligations under ERISA plans. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989). The Tenth Circuit in *Straub* rejected an attempt to use federal common law to modify orally the written terms of the plan and adopted the following rationale from *Nachwalter:*

"A central policy goal of ERISA is to protect the interest of employees and their beneficiaries in employee benefit plans. This goal would be undermined if we permitted oral modifications of ERISA plans because employees would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agree-

ments. This problem would be exacerbated by the fact that these oral agreements often would be made many year before any attempt to enforce them." 851 F.2d at 1265 (quoting *Nachwalter,* 805 F.2d at 960). Simply said, the Tenth Circuit will not recognize federal common law claims seeking oral modifications or amendments to the written plan since this would be counter to the express requirement that the plan be in writing and to the policy reasons behind this requirement.

The Eleventh Circuit has since clarified the scope of the *Nachwalter* holding by recognizing the distinction between oral amendments and modifications that are not actionable and oral interpretations that could be actionable. *Alday v. Container Corp. of Am.,* 906 F.2d 660, 666 (11th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). In *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1286 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990), it was held that a federal common law claim of equitable estoppel was available to an employee who had relied to his detriment on a plan representative's interpretation of an ambiguous provision. Requiring the plan sponsors to adhere to the plan interpretations given by its plan representatives was not viewed as interfering with the important right of employees and beneficiaries to rely on the written terms of the plan. 893 F.2d at 1286. Most recently, the Eleventh Circuit applied this rationale from *Kane* to informal written interpretations of the plan. *National Companies Health P. v. St. Joseph's Hosp.,* 929 F.2d 1558, 1572 (11th Cir.1991). This distinction between amendment and interpretation does not abridge the general rule that estoppel cannot extend the coverage of the plan. Binding the company to its interpretations of an ambiguous plan term is not an extension of coverage. *Id.* at 1572 n. 13.

Plaintiff attempts to circumvent the *Straub* decision in several ways. First, he argues it is out of step with recent cases from other circuits which have allowed estoppel claims in ERISA actions. Plaintiff particularly focuses on the discussion and reasoning in *Black v. TIC Investment Corp.,* 900 F.2d 112 (7th Cir.1990). What has been handed down in other circuits is not significant for this court must march to the beat of the drum pounded by the Tenth Circuit. The Seventh Circuit in *Black* noted that the Tenth and Eleventh Circuits held a view of estoppel contrary to what it intended to follow.[1] Plaintiff misplaces his reliance on *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344 (8th Cir.1980). The court in *Landro* relied on state law and did not overly concern itself with whether the remedies fashioned were consistent with the policies underlying ERISA. The court also found the term "credited service" to be ambiguous as used in the plan thereby justifying resort to extrinsic evidence. Plaintiff in the instant case does not assert that any of the relevant terms of the Coastal Corporation Plan are ambiguous.

Plaintiff next tries to distinguish *Straub.* Agreeing that the rule in the Tenth Circuit is "that oral communications between employers and employees should not be allowed to estop a denial of benefits," (Dk. 38 at 9–10), plaintiff asserts his claim is based principally on the annual *written* benefit statements which disclosed his monthly retirement income. This distinction carries no force. The *Straub* court noted that the *Nachwalter* court had cited as support, *Johnson v. Central States, Southeast and Southwest Areas Pension Fund,* 513 F.2d 1173, 1174–76 (10th Cir.1975), a pre-ERISA case which had held "that the description of a pension plan in a booklet and letter were not effective to modify the written terms of the plan." 851 F.2d at 1265.

1. The Seventh Circuit in *Black* approached the estoppel question as one of public policy rather than statutory interpretation. 900 F.2d at 114. This is inconsistent with the Tenth Circuit's holding in *Straub* that focuses on the statutory requirement of a written plan and the policy behind that requirement. The court in *Black*

was also careful to limit its holding to single-employer unfunded welfare benefit plans and expressly withheld its opinion on the application of estoppel principles to other situations, such as the case here involving a funded pension plan. 900 F.2d at 114–115.

Despite the citation of *Johnson* in both *Straub* and *Nachwalter,* plaintiff summarily concludes the *Johnson* decision was "overruled" with the passage of ERISA. The court rejects this unsupported and unexplained conclusion.

The Eleventh Circuit recently extended its holding in *Nachwalter*—that informal agreements could not be used to modify an ERISA plan—to reach written communications made in non-plan documents such as a summary of benefits booklet, letters sent to employees, and documents distributed at retirement seminars. *Alday v. Container Corp. of America,* 906 F.2d 660, 665 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). Since the formal plan document required by statute unambiguously set out the parties' rights, the *Alday* court found it unnecessary to resort to other non-plan, written statements. In the instant case, there is no challenge of ambiguity raised so this court has no reason to use the annual benefit statements in interpreting or construing any ambiguous terms of the Plan. The Eleventh Circuit in *Alday* was likewise unconvinced that any of these written statements constituted formal plan documents. *Id.*[2] In the instant case, plaintiff Miller has wholly failed to show how the benefit statements constitute the formal written plan instrument as required and defined by 29 U.S.C. § 1022. The annual benefit statements in no way resemble the comprehensive summary plan description requirements set out by statute.[3]

Having relied on these annual benefit statements over the course of ten years, plaintiff contends it would be inequitable to deny him those benefits. In fact, he believes this is the type of "extraordinary circumstance" that in pre-ERISA cases justified the use of estoppel. In *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1165 n. 10 (3rd Cir.1990), the court acknowledged that estoppel could be available in an ERISA case and, as an example, summarized the facts and holding from *Rosen v. Hotel & Restaurant Employees & Bartenders Union,* 637 F.2d 592 (3rd Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). There the pension fund was estopped from denying benefits on the force of a plan provision that required certain contributions to be made by the employer rather than the employee. The plaintiff employee had made some contributions himself after his pension was in jeopardy due to his employer falling behind in contributions. The *Rosen* court found extraordinary circumstance because the employee had not simply relied on mere assurances but had tendered money to the pension fund which was accepted and deposited into the fund. 637 F.2d at 598.[4] Plaintiff has not come forth with any case law resembling his situation to a degree that the court could find that plaintiff had a colorable claim for an extraordinary circumstance.

Reading no argument to the contrary, the court concludes that the plaintiff appar-

**2.** The Eleventh Circuit cautioned that its holding would not reach a fiduciary who had made fraudulent promises in informal communications. 906 F.2d at 666 n. 15. As in *Alday,* the plaintiff here does not allege fraud.

**3.** Plaintiff has stipulated that one or more of these annual benefit statements included the disclaimer that the plan document was controlling over the annual statement. Plaintiff is unable to show that the parties intended the annual statements to be a part of the Plan.

**4.** The court cited and distinguished the case of *Phillips v. Kennedy,* 542 F.2d 52 (8th Cir.1976), in which estoppel was not allowed on the basis of assurances that the plaintiff was included in the pension plan or on the basis of misleading statements in the brochure describing pension

rights. The rationale for this holding was expressed by the *Phillips* court as follows:

> The actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan.

542 F.2d at 55 n. 8. The *Rosen* court distinguished *Phillips* noting that the actuarial soundness was not in jeopardy because the defendant fund was simply being required to pay in accordance with the terms of the plan.

There is no meaningful difference between the mere assurances in *Phillips* and those made in the case at bar. In addition, the payment of pension funds here would be outside the terms of the pension plan thereby bringing into question the matter of actuarial soundness.

ently concedes the defendants have accurately construed the unambiguous terms of the Plan in deciding the issue of plaintiff's credited service. The defendants are entitled to summary judgment on plaintiff's ERISA claims.

## PROPER PARTY

 Defendant Coastal Corporation contends it is not a proper party since ERISA only permits suits against the Plan as an entity, citing 29 U.S.C. § 1132(a)(1)(B) and *Lupert v. California State Bar*, 761 F.2d 1325 (9th Cir.), *cert. denied*, 474 U.S. 916, 106 S.Ct. 241, 88 L.Ed.2d 251 (1985). Plaintiff does not respond to or contest the merits of this contention. The court, therefore, dismisses Coastal Corporation for the additional reason that it is not a proper party.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (Dk. 35) is granted.