**David W. WILLIAMS, Plaintiff–Appellant,**

v.

**BRIDGESTONE/FIRESTONE, INC., Defendant–Appellee.**

**No. 91–3389.**

United States Court of Appeals, Fifth Circuit.

March 2, 1992.

Charles E. Daspit, Harry L. Shoemaker, III, Shoemaker, Lazarre, Daspit & Blackwell, Baton Rouge, La., for plaintiff-appellant.

Gregg Kronenberger, Michael C. Garrard, Kean, Miller, Hawthorne, Darmond,

McCowan & Jarman, Baton Rouge, La., for defendant-appellee.

Before REYNALDO G. GARZA, GARWOOD and DUHÉ, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Plaintiff–Appellant appeals from summary judgment in favor of Defendant–Appellee company, claiming that said company wrongfully denied him extended health care benefits under an employee benefit plan. For the reasons set forth below, we reverse summary judgment and remand for further proceedings.

## PROCEDURAL HISTORY

Plaintiff–Appellant David W. Williams ("Williams") filed this action for declaratory judgment in Louisiana state court on May 11, 1990. Williams sought a declaration that he had over five years of service as an employee of Defendant-Appellee Bridgestone/Firestone Inc. ("Bridgestone/Firestone"), which would have entitled him to greater benefits under Bridgestone/Firestone's "Comprehensive Medical Expense Benefits Plan" ("the Plan"). Bridgestone/Firestone removed the suit to the Federal District Court for the Middle District of Louisiana because the Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001, *et seq.*

Bridgestone/Firestone subsequently filed a motion for partial summary judgment seeking dismissal of Williams' claims. On January 2, 1990, the district court denied Bridgestone/Firestone's motion, ruling that a genuine issue of fact material to a claim for detrimental reliance existed. The district court based its conclusions upon allegations in Williams' affidavit that he had relied on his supervisor's oral representations about the Plan to the effect that he was eligible for extended medical benefits. One year later, however, Bridgestone/Firestone moved for reconsideration of its summary judgment motion in light of our decision in *Cefalu v. B.F. Goodrich*, 871 F.2d 1290 (5th Cir.1989) (plaintiff cannot base a breach of contract claim on oral modifications of an employee benefit plan). On January 14, 1991, the district court reversed its earlier ruling and held that "oral promises cannot serve as a basis for a claim involving an 'employee welfare benefit plan' within the meaning of [ERISA]."

Upon a second reconsideration, the district court again ruled in favor of Bridgestone/Firestone, granting its motion for partial summary judgment and dismissing Williams' claim with prejudice. Williams appeals.

## FACTS

Williams began working for Bridgestone/Firestone on April 25, 1983, as manager of its store at Cortana Mall in Baton Rouge, Louisiana. On March 31, 1986, Williams was involved in a motor vehicle collision and sustained serious injury to his back which required surgery.

Williams returned to work, but his condition worsened and in early April, 1988, his physician informed him that he required further surgery which would include a multi-level double spinal fusion of lumbar vertebrae and the insertion of steel rods in his back. Williams knew that the surgery could possibly disable him. The operation, performed on April 12, 1988, did in fact disable Williams and he never returned to work. It is relevant to this case that the surgery, although major, was not performed on an emergency basis and, Williams alleges, could have been performed three or four months later than it was.

Under the Plan, an employee who becomes totally disabled will continue to receive medical expense coverage benefits according to his length of service with the company. If the employee has less than five years of service with the company, medical benefits will continue for two years from the date of disability. If an employee becomes totally disabled after he has accumulated five or more years of service, he could be eligible for these benefits for a

much longer period, i.e., up until his 65th birthday.

Williams' affidavit states:

He understood that Bridgestone/Firestone's policy, either formally or informally through usual custom and practice, allowed for earned and accumulated vacation time to be added on to actual service time to determine his time and length of employment with Bridgestone/Firestone for determination of the employee's benefits under the Plan, including major medical benefit coverage.

Additionally, Williams alleges that in early April, 1988, he and his wife discussed the scheduling of his surgery with his supervisor, Jack Bailey ("Bailey"). According to Williams' affidavit, Bailey "specifically told and assured affiant and his wife that, due to his earned and accrued vacation time, affiant would be considered to have more than five (5) years of employment service time with Bridgestone/Firestone as of the surgery date of April 12, 1988." Williams alleges that he relied upon Bailey's assurance in scheduling his surgery.

Williams further alleges that

Mr. Bailey encouraged [Williams] to schedule the surgery on April 12, 1988, as this would be during a slack time of business for the Bridgestone/Firestone store at Cortana Mall, and it was therefore the best time, from Bridgestone/Firestone's point of view, for affiant to undergo the surgery and be away from work.

By letter dated December 7, 1988, Bridgestone notified Williams that he was just under two weeks shy of having 5 years service, and that therefore his coverage would continue only for a two-year period from his last day worked, or until April 10, 1990.

## STANDARD OF REVIEW

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The standard of review is *de novo. Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989). The evidence of record must demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Importantly for this case, we "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

## ANALYSIS

In *Cefalu*, we held that oral modifications to an employee benefit plan governed by ERISA could not form a basis for a breach of contract claim. Similarly, in *Degan v. Ford Motor Co.*, 869 F.2d 889 (5th Cir.1989), we held that "ERISA precludes oral modifications to benefit plans and that claims of promissory estoppel are not cognizable in suits seeking to enforce rights to pension benefits." *Id.* at 895 (citations omitted). Most recently, we held that plaintiffs could not succeed in an action attempting to alter the plain meaning of an employee benefit plan governed by ERISA based on a theory of equitable estoppel. *Rodrigue v. Western and Southern Life Ins. Co.*, 948 F.2d 969 (5th Cir. 1991). We noted therein that "ERISA specifically provides that its provisions preempt state laws that relate to any employee benefit plan. 29 U.S.C. § 1144(a)." *Id.* at 971. Therefore, claimants may not recover based on a state law theory of estoppel. Moreover, while "[t]he *Degan* Court explained that Congress intended that federal courts should create federal common law when adjudicating disputes regarding ERISA, ... [t]he Court cautioned ... that this power extends only to areas that federal law preempts but does not address." *Id.* [Citations omitted]. In *Rodrigue*, we noted the *Degan* Court's recognition that 29 U.S.C. §§ 1102(a)(1) and (b)(1) require that employers establish and maintain benefit plans according to a written instrument which establishes procedures for amendment and specifies those authorized to make amendments. *Id.* Therefore, Congress has addressed the question of amendment and we "are not

free to fashion federal common law that recognize[s] estoppel-based arguments." *Id.*

■ Williams, however, claims that he is not attempting to modify the terms of the Plan. Rather, he claims that because the Plan does not define "five years," its meaning is open to interpretation. He does not deny that his service ended a few days before a calendar would have demonstrated that he had worked for Bridgestone/Firestone for five years. He contends rather that Bailey's alleged representation, i.e., that because Williams had accumulated three weeks of vacation time he was already regarded as having worked for Bridgestone/Firestone for over five years, was a reasonable *interpretation* of an ambiguity. This interpretation apparently seemed all the more reasonable because Williams claims that this was his understanding of Bridgestone/Firestone's policy.

The Eleventh Circuit, which recognizes that claimants cannot succeed on estoppel arguments based on oral modifications of employee benefit plans, *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir.1986), has held that the federal courts may fashion a common law of equitable estoppel in cases involving oral interpretations of ambiguities in such plans. *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285–86 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). Williams contends that the Plan was ambiguous and that we should adopt the *Kane* holding.

The Eleventh Circuit has made clear that *Kane* only comes into play when the terms of a plan are ambiguous. In addition, equitable estoppel may only be used where the communications constituted an interpretation of that ambiguity.

*Alday v. Container Corp. of America,* 906 F.2d 660, 666 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). Given the record presented to us in this case, we need not decide whether these two conditions have been met, or even whether to adopt *Kane.*

It behooves us at this point to review the policy behind the Congressional insistence on a written instrument. We have stated:

Applying the common-law concept of estoppel would mean presenting retirement plan administrators with claims for payment from individuals, otherwise ineligible, who were parties to oral agreements that ... have lain unsuspected and inert for years. That prospect would threaten the stability and solvency of many plans upon which so many other employees are dependent.

*Degan v. Ford Motor Co.,* 869 F.2d 889, 895 (5th Cir.1989).

While we need not reach the issue of estoppel here, we note that if Williams was correct in his belief that it was Bridgestone/Firestone's policy to include accrued vacation time in the calculation of time served on the job, then a claim such as Williams' would not have been "unsuspected," and would therefore not "threaten the stability and solvency of" the Plan.

We have stated:

The policy behind the "written instrument" clause in ERISA is to prevent collusive or fraudulent side agreements between employers and employees. But for the "written instrument" clause, employees [1] could discriminate in favor of certain plan participants to the detriment of others.

*Cefalu,* 871 F.2d at 1296 (footnote added). If it was Bridgestone/Firestone's policy to include vacation time in the calculation of time employed, then it would be Williams who suffered discrimination.

Along these lines, and most importantly for this case, the Plan describes how and under what circumstances coverage terminates:

For the purpose of the Plan, an employee's employment will be considered to terminate when he/she is no longer actively engaged in work on a full-time basis for the Company.

---

1. We here meant "employees" in its general sense, i.e., both potential claimants and those who administer the plans.

However, if absence from such full-time work is then of a type set forth below, the Company may, *without discrimination among persons in like circumstance,* consider the employee as not having terminated his/her employment for purposes of coverage under the Plan and, while such absence is of any such type as specified below, he/she may continue to be a member of an eligible class up to any applicable time limit set forth below.

[Emphasis added].

The Plan then states, *inter alia,* that one may receive extended coverage if he/she has worked for Bridgestone/Firestone for over five years. Williams alleges in his affidavit that "his understanding of the company's policy and usual practice and procedure regarding consideration of earned vacation time and his discussions with Jack Bailey led him to conclude that he had more than five (5) years of service with the company when he underwent this serious surgery on April 12, 1988." Bridgestone/Firestone presented no summary judgment evidence that it did not have a policy of calculating time served by including accrued, unused vacation time as Williams' affidavit states he understood its actual policy to be. It would appear that, if it was the policy of Bridgestone/Firestone to calculate time served by including the vacation time that Williams claims to have accrued, he was discriminated against in violation of the clear wording of the written instrument.[2] We therefore believe that a genuine issue of material fact exists as to the policy of Bridgestone/Firestone in calculating the length of time served, and that the district court improvidently granted summary judgment.

## CONCLUSIONS

In adjudicating the rights of claimants under ERISA-governed employee benefit plans, courts must base their conclusions on the written instrument. Insurers may not discriminate among their insureds in violation of benefit plans by hiding behind ERISA. We REVERSE and REMAND this action as a genuine issue of material fact exists as to Bridgestone/Firestone's policy regarding calculation of time of employment. If Williams can prove that it was Bridgestone/Firestone's policy to include earned vacation time in calculating the period that an employee had worked for the company, then he will be entitled to the extended benefits of one who worked over five years.

DUHÉ, Circuit Judge, dissenting:

Because I believe the majority opinion is contrary to our precedent in *Rodrigue v. Western & Southern Life Insurance Co.,*[1] and because I do not believe that the phrase "5 or more years of service" is ambiguous, I respectfully dissent.

The Plan determines Mr. Williams's benefits according to whether he "had 5 or more years of service at the time the disability commenced." R. 83–84. Mr. Williams began work with Bridgestone/Firestone on April 25, 1983. By his own account, his disability commenced on April 12, 1988. He had less than five years of service at the time his disability commenced, according to the plain meaning of the Plan.

The majority remands this case to determine whether five years means (1) five years, or (2) five years less accrued, unused vacation time. In that it says that the "courts must base their conclusions on the written instruments,"[2] the majority must be holding that the phrase "five years" can have either of those two meanings. When a phrase can have two or more reasonable interpretations, it is ambiguous. *E.g., United Paperworkers Int'l Union v. Champion Int'l Corp.,* 908 F.2d 1252, 1255 (5th Cir.1990). I cannot agree that "five years" is susceptible of two reasonable in-

---

2. We note that, while the district court decided this case on the basis of equitable estoppel, Williams had originally claimed that he was entitled to benefits "in accordance with the terms and conditions of a benefits plan ..." Record at 32. *See also* Record at 7.

1. 948 F.2d 969 (5th Cir.1991).

2. At page 1074.

terpretations, and I cannot agree that it is ambiguous.

The majority will alter the Plan to read "5 or more years of service, *less accrued, unused vacation time,*" if the company has been calculating benefits in this way. The majority is estopping the company from following the plain meaning of the Plan because of what the company may have said or done in the past. This holding is contrary to *Rodrigue,* which by the majority's own admission, held that the plain meaning of a plan cannot be altered by estoppel principles. At pages 1072–73 (construing *Rodrigue v. Western & S. Life Ins. Co.,* 948 F.2d 969 (5th Cir.1991)).

In my view, the correct result in this case is terribly inequitable. Faced with these difficult facts, the majority has avoided our precedent and hidden its holding that the phrase "5 years" is ambiguous. "Unlike the deconstructionists at the forefront of modern literary [and legal] criticism, the courts [should] still recognize the possibility of an unambiguous text." *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n,* 783 F.2d 1234, 1238 (5th Cir.1986).

For those reasons, I respectfully dissent.