Marie FITCH, Plaintiff,

v.

ARKANSAS BLUE CROSS AND BLUE SHIELD, Defendant.

Civ. No. 92–5036.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

June 12, 1992.

Oscar Stilley, Fort Smith, Ark., for plaintiff.

David R. Matthews, Matthews, Campbell & Rhoads, Rogers, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is an action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiff, Marie Fitch, filed this action in the Circuit Court of Madison County, Arkansas, on February 7, 1992. On March 5, 1992, the defendant, Arkansas Blue Cross and Blue Shield, removed the action to this court.

The court has before it for *de novo* review the administrative record that the par-

ties have stipulated constitutes the entire record made before the administrator and the briefs of the parties. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The sole issue is whether the principles of estoppel preclude the defendant from relying on a pre-existing condition exclusion contained in the plan.

*Background*

Mrs. Fitch became an insured of the defendant on October 1, 1976, pursuant to a group plan with the Huntsville School District. Plaintiff ceased being employed at the school district in June of 1990. At that time, plaintiff elected to continue her coverage under COBRA (Consolidated Omnibus Budget Reconciliation Act of 1985). The COBRA coverage was effective from July 1, 1990, until the coverage was deleted on January 1, 1991.

Mrs. Fitch states that on or about December 1, 1990, she called the First National Bank of Huntsville, her husband's employer, and requested that her health insurance be transferred to the bank's group insurance plan.

A change of coverage form signed by Mr. Fitch on January 8, 1991, was received by the defendant on January 11, 1991. Mrs. Fitch became an insured of the defendant pursuant to a group plan with the First National Bank of Huntsville on February 1, 1991. Thus, Mrs. Fitch was not covered by any insurance during the month of January.

During 1991 several claims were received and processed by the defendant. According to the defendant, payment of these claims was inadvertent. When defendant reviewed the medical records, "it was determined that this condition was pre-existing and the claims should not have been paid. Claims filed after this review were denied as pre-existing." Letter of March 25, 1992, from Mrs. Dorothy Dillon to Mr. Oscar Stilley. In December, 1991, Mrs. Fitch had surgery on her wrists to correct carpal tunnel problems. The defendant denied payment of these claims as pre-existing conditions.

The plaintiff argues that the defendant should be estopped from denying benefits on the basis of the pre-existing condition exclusion. First, plaintiff argues that the defendant had the records to show that Mrs. Fitch's application arrived eleven days late. Second, plaintiff states defendant knew Mrs. Fitch was being treated for carpal tunnel related problems and had in fact paid claims for treatment of this medical condition. It is argued that these payments indicated that the defendant had no intention of denying coverage on account of the delay incurred in changing Mrs. Fitch's insurance to the bank's group plan. Plaintiff contends this course of conduct caused Mrs. Fitch to believe that she would be covered for her carpal tunnel surgery on December 2, 1991. Third, Mrs. Fitch states this belief was bolstered by the words "DEP Waiting Period Waived" which appeared on her husband's insurance card issued on February 1, 1991. Mrs. Fitch states she believed these words meant that the waiting period was waived for dependents.

Defendant contends the lapse in coverage in January of 1991 triggered the pre-existing injury provision of her husband's policy and precludes coverage of the treatments for carpal tunnel syndrome for the period of time from February 1, 1991, until February 1, 1992. We are told that the words, "DEP Waiting Period Waived" printed on the benefit card applies only to the waiting period for the original group members and not to dependents or members covered after the original effective date.

*Discussion*

The group insurance coverage provided by First National Bank of Huntsville, Arkansas, contains the following provision:

ARTICLE X. SERVICES NOT INCLUDED

No benefit or services of any kind are provided under this certificate for:

(b) Treatment of pre-existing conditions or diseases, until your coverage has been in effect continuously for 12 months. This means a condition or disease which causes symptoms, be-

fore the effective date, that would have caused an ordinarily prudent person to seek diagnosis, care, or treatment. This also applies to aggravations of such conditions or diseases. **PLEASE REFER TO YOUR BENEFIT SUMMARY CARD TO DETERMINE IF THE 12 MONTH WAITING PERIOD IS WAIVED FOR YOUR COVERAGE.**

There appears to be no question that Mrs. Fitch's condition pre-existed the effective date of the group coverage at issue. The sole issue is whether the defendant should be estopped from invoking this provision to deny medical benefits for the carpal tunnel surgery and related medical expenses.

In recent years the issue of whether state law principles of estoppel apply to an ERISA governed employee benefit plan has been the subject of numerous reported decisions. Some courts have held that state law estoppel principles are preempted and cannot be utilized in actions for benefits under ERISA. *See e.g., Straub v. Western Union Telegraph Co.*, 851 F.2d 1262, 1265–67 (10th Cir.1988); *Williams v. Bridgestone/Firestone, Inc.*, 954 F.2d 1070 (5th Cir.1992) (courts not free to fashion federal common law to recognize estoppel-based arguments); *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989).

Other courts have disagreed with these cases noting that they do not follow the general rule that estoppel principles apply to all legal actions. *See generally Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir.1990). In *Black* the court stated "[t]he reasons for the general application of estoppel are simple enough—the doctrine prevents a party from benefitting from its own misrepresentations." *Black v. TIC Investment Corp.*, 900 F.2d 112, 114–15 (7th Cir.1990). (estoppel principles applicable at least for single-employer unfunded plans). "It is an exception to that general rule to deny the use of the doctrine." *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir.1990).

It has also been noted that the language contained in 29 U.S.C. § 1132(a)(3) allowing a participant or beneficiary to bring a civil

action to "obtain other appropriate equitable relief" evidences Congress's intent that federal courts fashion federal common law. *Law v. Ernst & Young*, 956 F.2d 364, 369 (1st Cir.1992) (*citing, Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 156, 105 S.Ct. 3085, 3097, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring in judgment)). Additionally, a line of case law exists that imposes liability based upon reliance on misstatements or errors in the summary plan description, even when the misstatements conflict with the plan itself. *See e.g., Edwards v. State Farm Mut. Auto Ins. Co.*, 851 F.2d 134 (6th Cir.1988).

Although there is conflicting authority on this issue, the trend appears to be toward recognizing the applicability of estoppel principles. Whether this recognition involves the application of state law principles or the adoption of estoppel principles as part of the federal common law of ERISA is not always clearly delineated.

Despite what appears to be the trend, the courts have been reluctant in the application of estoppel principles and have emphasized the need to protect the actuarial soundness of benefit plans and ERISA's requirement that plan provisions be in writing. It has been noted that the "policy behind the 'written instrument' clause in ERISA is to prevent collusive or fraudulent side agreements between employers and employees. But for the 'written instrument' clause, employees could discriminate in favor of certain plan participants to the detriment of others." *Williams v. Bridgestone/Firestone, Inc.*, 954 F.2d 1070, 1073 (5th Cir.1992) (quoting *Cefalu v. B.F. Goodrich*, 871 F.2d 1290, 1296 (5th Cir. 1989)). Serious doubts have been expressed over the extension of plan eligibility through estoppel and the courts have placed various limitations on the use of these principles.

The Court of Appeals for the Eleventh Circuit has held that claimant's cannot succeed on estoppel arguments based on oral modifications of employee benefit plans. *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir.1986). *See also Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1263–64 (10th Cir.1988) (state common law claim of promissory estoppel based upon an oral modification to an ERISA plan preempted under 29 U.S.C. § 1144(a)). However, the courts are allowed to fashion a common law equitable estoppel in cases involving oral interpretations of ambiguities in such plans. *Kane v. Aetna Life Insurance*, 893 F.2d 1283, 1285–86 (11th Cir.), *cert denied*, —— U.S. ——, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). The *Kane* case makes clear that the rule enunciated therein only comes into play when the terms of the plan are ambiguous *and* the communications constituted an interpretation of that ambiguity. *Alday v. Container Corp. of America*, 906 F.2d 660, 666 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991).

In *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344 (8th Cir.1980) the Court of Appeals for the Eighth Circuit applying Minnesota law upheld the application of estoppel principles to an ERISA plan. However, this case provides no indication of the view of the Eighth Circuit on the issue before this court because the acts or omissions at issue occurred before the effective date of ERISA's preemption provision. Thus, no argument was or could have been presented regarding the possible preemption of equitable estoppel principles.

In *Phillips v. Kennedy*, 542 F.2d 52 (8th Cir.1976) the Eighth Circuit made the following comments:

We are urged to decide this case on the basis of an estoppel allegedly created by the acceptance of payments made to the fund by Phillips' employer, assurances made to the President of Tri–State by a local union official and by a union trustee that Phillips would be included in the Plan, the payment of retirement pension to an employee with similar status at Tri–State as Phillips and misleading statements in the brochure distributed by the fund describing pension rights. We decline to do so. *Accord, Moglia v. Geoghegan*, 403 F.2d 110, 117 (2 Cir.1968); *contra, Scheuer v. Central States Pension Fund*, 358 F.Supp. 1332, 1338 (E.D.Wis.1973). The actuarial soundness

of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan. We do emphasize, however, that it is the duty of the trustees to verify on a regular basis the eligibility of those for whom contributions are being made. The breach of that duty might well expose the trustee to personal liability in an appropriate case.

While the receipt and acceptance by the trustees of contributions to the pension fund on Phillips' behalf does not create an estoppel in his favor, it can be considered with all other evidence in determining whether he was a unit employee. The evidence is particularly relevant here because there is some evidence that the trustees may have denied Phillips' pension because he took a withdrawal card from the union when the union lost its bargaining rights after a 1970 strike. The fact that Phillips withdrew from the union cannot bar his spouse from receiving benefits if she is otherwise entitled to receive them.

*Id.* at 55 n. 8.

Despite this language in *Phillips*, we do not believe the Court of Appeals for the Eighth Circuit bar the application of estoppel principles in all ERISA actions. Whatever the applicability of equitable estoppel claims in general under ERISA, the court believes equitable relief is proper under ERISA where the challenged actions do not involve alleged modifications of the plan. In such cases the concerns expressed by the courts in *Straub, Nachwalter,* and *Kane* and to a lesser extent in *Phillips* are not directly involved. The estoppel claim currently before the court does not concern an alleged oral modification of the terms of the plan and we express no view on whether an estoppel claim would be actionable in that context.

■ Under promissory estoppel it is argued that the plan should be modified based upon oral representations made by an agent of the plan whereas under estoppel by conduct it is argued that the written provisions of the plan should be overridden to do equity. The typical case involves active misrepresentation. In such cases the elements of equitable estoppel as defined by the federal common law are: (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation. *National Companies Health Benefit Plan v. St. Joseph's Hospital,* 929 F.2d 1558, 1572 (11th Cir.1991). *See also Heckler v. Community Health Services,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984).

■ Plaintiff presents several arguments in support of her estoppel theory. First, she argues that she telephonically requested insurance coverage in December, 1991, and that defendant was aware the application was received late. The telephone request, however, was made to a bank official rather than a plan official and cannot be regarded as binding on the plan. *Cleary v. Graphic Communications International Union Supplemental Retirement & Disability Fund,* 841 F.2d 444, 447 (1st Cir.1988). Further, plaintiff does not assert any representation was even made regarding the effective date of the insurance coverage. Nor does it appear that the plan had any knowledge regarding the late receipt of plaintiff's request for coverage. The defendant received on January 11, 1991, a change coverage request dated by Mr. Fitch on January 8, 1991. Second, plaintiff states that the words "DEP Waiting Period Waived" appearing on her husband's insurance card lead her to believe there was no waiting period for dependents. There is, however, no indication that plaintiff relied on these words.

■ Third, the plaintiff contends the defendant's acts of disbursing benefits on three occasions for medical treatment asso-

ciated with her carpal tunnel syndrome provides a bases for reasonable reliance. Plaintiff contends she relied on this payment history and had no idea that benefits would be denied for the surgery. Plaintiff states she could very easily have scheduled the surgery for February, 1992, when the pre-existing condition exclusion would no longer have been applicable.

Under the circumstances of this case, we conclude that the defendant's acts constituted a representation that benefits would be paid with respect to this medical condition. The defendant failed to assert the pre-existing condition provision of the plan in connection with the processing of three related requests for payment of benefits. Plaintiff justifiably and reasonably relied on this payment history in scheduling the non-emergency surgery. *Cf. Cleary v. Graphic Communications International Union Supplemental Retirement & Disability Fund,* 841 F.2d 444 (1st Cir.1988) (fact that fund began to disburse supplemental benefits is insufficient to require a finding of estoppel against the fund—the acts and representations at issue clearly contradicted the written rules of the fund). We therefore hold that the defendant is estopped from denying benefits for the carpal tunnel surgery on the basis of the pre-existing condition exclusion of the plan.