**Robert E. SLICE, Plaintiff,**

v.

**SONS OF NORWAY, Defendant.**

**Civ. No. 4–92–1233.**

United States District Court,
D. Minnesota,
Fourth Division.

April 13, 1993.

---

398

William L. Lucas, Harvey, Thorfinnson & Lucas, Eden Prairie, MN, for plaintiff.

Michael J. Bleck, Edward Thomas Wahl, Oppenheimer, Wolff & Donnelly, Minneapolis, MN, for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

### FACTS

Plaintiff Robert E. Slice alleges the following facts. On April 15, 1979, plaintiff began working for defendant Sons of Norway as a custodian. On April 28, 1987, defendant provided plaintiff with a statement of pension benefit determinations indicating that if plaintiff retired from full-time employment on May 31, 1987, defendant would pay plaintiff pension benefits of $251.87 per month for life. Plaintiff claims he decided to retire only after defendant informed him that he would receive $251.87 per month.[1] Plaintiff retired on May 31, 1987 and began receiving monthly checks for $251.87 commencing on July 1, 1987. On June 12, 1989, plaintiff received a letter from defendant stating that there had been a miscalculation and plaintiff was entitled to only $105.80 per month. According to defendant, from July 1987 to June 1989 there had been overpayments to plaintiff of $3,505.68, but defendant waived its rights to collect those overpayments. However, defendant informed plaintiff that effective July 1, 1989, his monthly benefits would be reduced to $105.80.

### PROCEDURAL HISTORY

Plaintiff filed suit in state court alleging breach of contract, negligent misrepresentation, and breach of fiduciary duty. The state trial court found plaintiff's claims preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et·seq. (ERISA) and dismissed the action. Plaintiff then filed suit in federal court alleging the same causes of action. The district court[2] dismissed all claims finding that they were based on state law and were therefore preempted by ERISA. Plaintiff appealed to the United States Court of Appeals for the Eighth Circuit. The Eighth Circuit held that "[w]hile state law is preempted in an action relating to a benefit plan, we conclude that the District Court should have addressed whether Slice's complaint stated a cause of action under either an express provision of ERISA or federal common law." *Slice v. Sons of Norway*, 978 F.2d 1045, 1046 (8th Cir.1992). The Eighth Circuit remanded the case and instructed the Court, to which the case has been reassigned, to address those issues. Defendant has now brought a motion to dismiss on the grounds that plaintiff has failed to state a claim for which relief may be granted.

### DISCUSSION

█ In reviewing a motion to dismiss for failure to state a claim the Court presumes all factual allegations to be true and all reasonable inferences from those allegations are construed in favor of the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Palmer v. Tracor, Inc.*, 856 F.2d 1131, 1132 (8th Cir.1988). The appropriate inquiry is not whether plaintiff will ultimately prevail but whether he will be allowed to introduce evidence to support his claims. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. Because dismissal on the pleadings is an extreme remedy it is not favored by the courts and is employed only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). *Robinson v. MFA Mutual Insurance Co.*, 629 F.2d 497, 500 (8th Cir.1980). *See also Palmer*, 856 F.2d at 1132.

### I. Has Plaintiff Stated a Claim Under ERISA?

██ ERISA's civil enforcement provisions provide the exclusive remedy for participants or beneficiaries seeking to enforce their rights under an ERISA plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51–57, 107 S.Ct. 1549, 1555–58, 95 L.Ed.2d 39 (1987). Under the civil enforcement scheme of ERISA, a

---

1. Plaintiff admits that he began to explore the possibility of retiring in October 1986 but plaintiff maintains that he did not make a final decision to retire until after he received his statement of benefits in April 1987. Defendant asserts that plaintiff received a poor performance review in October 1986 and when asked what he intended to do to improve his performance, plaintiff said he intended to retire the following summer.

2. The Late Honorable Edward J. Devitt.

participant or beneficiary may sue to recover benefits due under the plan or to enforce rights under the plan. 29 U.S.C. § 1132(a)(1)(B). A plan participant or beneficiary may also bring an action for breach of fiduciary duty. *Id.* § 1132(a)(2); § 1109.

■ Defendant argues that plaintiff cannot state a claim under section 1132(a)(1)(B) because that section limits recovery to "benefits due to him under the terms of his plan." Defendant asserts that the benefits due plaintiff under the terms of the plan are $105.80 per month and not $251.87 per month.

Plaintiff appears to concede that he cannot state a claim under section 1132(a)(1)(B) for benefits due under the terms of the plan. In fact, plaintiff does not contend that he is actually entitled to $251.87 per month. Instead, plaintiff argues that defendant breached its fiduciary duty by negligently misrepresenting what his monthly benefits would be. Plaintiff cites *Kuntz v. Reese*, 760 F.2d 926, 935 (9th Cir.1985), *vacated on other grounds*, 785 F.2d 1410 (9th Cir.), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986), for the proposition that misrepresentations can give rise to a claim for breach of fiduciary duty under section 1132(a)(2). Thus, the issue before the Court is whether plaintiff has stated a claim under section 1132(a)(2).

ERISA imposes personal liability on a plan fiduciary if the plan fiduciary breaches a duty and that breach results in losses to the plan. 29 U.S.C. § 1132(a)(2); § 1109. The Court finds that if defendant's mistaken benefits calculations amounted to a breach of fiduciary duty, it was a duty to the plan's other participants, not to plaintiff, that was breached. *See Id.* § 1104(a)(1)(A)(i). Defendant overpaid plaintiff for two years and has now waived any right to recover those overpayments. The Court cannot award plaintiff benefits on a breach of fiduciary duty theory when he admits he is not entitled those benefits under the terms of the plan. *See Rinard v. Eastern Co.,* 769 F.Supp. 1416, 1428 (S.D.Ohio 1991). The viability of plaintiff's claim must stand or fall on an estoppel theory and not a breach of fiduciary duty theory. *See id.* Whether plaintiff can establish an estoppel claim is a matter of federal common law and is discussed *infra.*

■ More important, even if plaintiff could state a claim for breach of fiduciary duty, the plan, and not plaintiff, would be entitled to recover damages. In *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court addressed the issue whether a fiduciary may be held personally liable to a plan participant or beneficiary for extra-contractual damages. In *Massachusetts Mutual,* the plan's fiduciary terminated, but later retroactively reinstated, plaintiff's disability benefits. The plaintiff alleged that although she received all of the benefits she was contractually entitled to, the plan's fiduciary breached its duty to her. The Court concluded that any damages recoverable for breach of fiduciary duty inured to the benefit of the plan as a whole and not to an individual beneficiary. *Id.* at 140, 105 S.Ct. at 3089. The Court stated that the reason Congress established liability for breach of fiduciary duty was to protect the financial integrity of the plan. *Id.* at 141 & n. 9, 105 S.Ct. at 3090 & n. 9. The Court held that while an individual participant is entitled to bring an action to enforce rights under the plan, only the plan itself could recover extra-contractual damages from a plan fiduciary. *Id.* at 143, 105 S.Ct. at 3091.

The Court is convinced that even if plaintiff had attempted to distinguish his facts from *Massachusetts Mutual,* he would be unable to do so. In *Massachusetts Mutual,* the plaintiff was denied benefits that the fiduciary later admitted she was entitled to under the terms of the plan. In the case at bar, plaintiff admits he is not entitled to $251.87 per month under the terms of the plan. Moreover, *Massachusetts Mutual* involved the denial of benefits under a welfare plan. Thus, even if the denial of benefits was a breach of fiduciary duty, the plan's financial integrity was not threatened. Nevertheless, the Court held that based on the statutory language, only the plan could assert a claim for extra-contractual damages. In the case at bar, defendant's overpayments to plaintiff might deplete the amount of funds available to other participants in the plan.

Thus, because the allegedly negligent misrepresentations might damage the other participants in the plan, this case presents an even stronger justification for limiting any recovery for breach of fiduciary duty to the plan itself.

In concluding that plaintiff cannot state a claim under an express provision of ERISA the Court has carefully considered the cases cited in the Eighth Circuit's opinion, including *Kuntz v. Reese*, 760 F.2d 926, 935 (9th Cir.1985, *vacated on other grounds*, 785 F.2d 1410 (9th Cir.), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986), the case on which plaintiff relies. In *Kuntz*, the plaintiffs contended that the defendants lied about the amount of benefits that plaintiffs would get under the plan and failed to comply with ERISA requirements for disclosing pension plan documents. The Ninth Circuit held that if plaintiffs were able to prove that defendants had lied, they could state a claim for breach of fiduciary duty under ERISA. 760 F.2d at 935. The Court finds that *Kuntz* is of limited value for two reasons. First, as the citation indicates, the original opinion was vacated and therefore is not controlling even in the Ninth Circuit.[3] Second, the original *Kuntz* opinion was issued six weeks before the Supreme Court's decision in *Massachusetts Mutual* and to the extent they are inconsistent, *Massachusetts Mutual* clearly controls.

The second case cited by the Eighth Circuit is *Powell v. Bob Downes Chrysler–Plymouth, Inc.*, 763 F.Supp. 1023 (E.D.Mo.1991). In *Powell*, the defendant terminated plaintiff but did not inform him of his rights to continued medical coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). Plaintiff later suffered a heart attack but received no treatment because of the costs involved. Plaintiff alleged that complications developed because of his failure to obtain treatment. The court found that plaintiff's allegations of breach of fiduciary duty stated a claim under ERISA. However, the court also specifically noted that extra-contractual damages would not be

available. It appears that the court was implying that if the plaintiff established that but for defendant's alleged misrepresentations he would have still been covered by the medical plan, he might be entitled to benefits under the terms of the plan. However, *Massachusetts Mutual* makes clear that under no circumstances could plaintiff have recovered benefits beyond those provided for in the plan.

Finally, the Eighth Circuit directs the Court to *Board of Trustees v. Continental Assur. Co.*, 690 F.Supp. 792 (W.D.Ark.1988). In that case, the plaintiffs were various employers who had pension plans that were arranged with defendant by independent insurance agencies. Over the years the independent insurance agencies allegedly siphoned off most of the money that the plaintiffs thought they were contributing to the pension plans. Adopting the reasoning in *Kuntz*, the court found that plaintiffs had stated a claim under ERISA for breach of fiduciary duty. *Id.* at 795. However, the critical distinction from the case at bar is that the plaintiffs were attempting to recover on behalf of the plans and not the individual participants.

In short, the Court finds that plaintiff's complaint does not state a cause of action under an express provision of ERISA. Plaintiff has not articulated any specific theory of liability and only cites the case of another circuit which was later vacated. Moreover, since the opinion relied upon by plaintiff was issued, the Supreme Court has held that an individual may not recover extra-contractual damages for breach of fiduciary duty. Under these circumstances, the Court holds that plaintiff has failed to state a claim under an express provision of ERISA.

## II. *Has Plaintiff Stated a Claim Under Federal Common Law?*

█ Courts have authority to fill in the gaps left by ERISA's express provisions through federal common law. *Pilot Life Ins.*

---

3. The court vacated that opinion on the basis that plaintiffs did not have standing to sue because they were former employees whose vested benefits under the plan had already been distributed in a lump sum. *Kuntz v. Reese*, 785 F.2d 1410, 1411–12 (9th Cir.), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986).

*Co. v. Dedeaux,* 481 U.S. 41, 55, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987); *Anderson v. John Morrell & Co.,* 830 F.2d 872, 877 (8th Cir.1987). Plaintiff asks the Court to recognize a federal common law claim for estoppel.[4] The Eighth Circuit's opinion noted that other circuits are divided on the issue. To assist the Court in deciding this issue, the Eighth Circuit specifically directed the Court's attention to the following cases.

In *Black v. TIC Investment Corp.,* 900 F.2d 112 (7th Cir.1990), the Seventh Circuit held that estoppel principles may apply in ERISA actions. In *Black,* plaintiff filed a claim under the company's severance pay plan after the company had filed for bankruptcy and after the company had notified employees that the plan would be terminated. The district court rejected plaintiff's estoppel claim. The Seventh Circuit reversed. The court framed the issue not as one of statutory interpretation but as one of public policy. *Id.* at 114. The court began by stating that estoppel principles generally apply to all legal actions and it is an exception to the general rule to deny the use of the doctrine. *Id.* at 115. The court pointed out that the reason ordinarily cited for refusing to allow estoppel in ERISA cases is a concern for the actuarial soundness of the ERISA plan. *Id.* The court found that concern did not apply it that case. "There are two types of ERISA plans: pension plans, which are funded and have strict vesting and accrual requirements; and welfare plans such as the one involved in this case, which have no such requirements. In the case of an unfunded welfare plan, there is no particular fund which is depleted by paying benefits. Thus there is no need for concern about the Plan's actuarial soundness." *Id.* (citation omitted). The court also noted that many plans involve multiple employers and in those cases it would be unfair to allow one employer's misrepresentations to bind the fund to pay benefits outside the strict terms of the plan. *Id.* The court found that concern did not apply in that case because it involved a single employer plan. The court then summed up its holding and reasoning:

> In cases such as these where there is no danger that others associated with the Plan can be hurt, there is no good reason to breach the general rule that misrepresentation can give rise to an estoppel. There is no reason for the employee who reasonably relied to his detriment on his employer's false representations to suffer. There is no reason for the employer who misled its employee to be allowed to profit from the misrepresentation. We hold, therefore, that estoppel principles are applicable to claims for benefits under unfunded single-employer welfare benefit plans under ERISA. We express no opinion as to the application of estoppel principles in other situations.

*Id.* The Seventh Circuit then remanded the case to the district court for a determination whether plaintiff had established the elements of estoppel and was entitled to recover. *Id.* at 116.

In *Kane v. Aetna Life Ins.,* 893 F.2d 1283 (11th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990), the Eleventh Circuit held that estoppel principles may be applied to a limited extent in ERISA actions. In *Kane,* plaintiffs were considering adopting a baby that had been born prematurely and suffered serious medical complications. Plaintiffs realized that without insurance coverage they would be unable to pay for the child's medical expenses. Plaintiffs sought to ascertain whether their medical plan would pay for the child's medical expenses but they did not have a copy of the plan. Plaintiffs called Aetna Life Insurance

---

4. The precise claims plaintiff's complaint attempts to state are difficult to identify. The Eighth Circuit concluded that plaintiff essentially claims that defendant breached a contract based on the original amount of the benefit payments and was equitably estopped from lowering the promised payment. *Slice,* 978 F.2d at 1046.

The only claim that plaintiff's memorandum specifically argues should be recognized under federal common law is his estoppel claim. However, even if plaintiff had argued that he had a federal common law claim for breach of contract based on the document he received and which stated that he was entitled to $251.87 per month, that argument would fail. *Alday v. Container Corp. of America,* 906 F.2d 660, 665 (11th Cir. 1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991) ("Congress expressly prohibited informal *written* amendments of ERISA plans.") (emphasis in original).

Company, the plan administrator, and inquired about coverage. The company's representative told plaintiffs that the child would be covered under the plan from the date of the commencement of formal legal adoption proceedings. After the commencement of formal adoption proceedings, the hospital called Aetna and Aetna confirmed that the child was covered. Thereafter, substantial medical expenses were amassed. When plaintiffs filed a claim, Aetna denied it. Aetna cited a plan provision which, according to Aetna, plainly stated that medical expenses for continuous hospitalization were not covered if the hospitalization began prior to the effective date of coverage.

The Eleventh Circuit began its analysis by noting that, in that circuit, the federal common law of equitable estoppel was not available for claims involving oral amendments to or modifications of employee plans governed by ERISA because ERISA specifically addresses those issues. *Id.* at 1285. The court also noted that estoppel may not be invoked to enlarge or extend the coverage specified in the contract. *Id.* at 1285 n. 3. The court went on to hold, however, that the plan's language was ambiguous and the federal common law of equitable estoppel could be applied because the representations made by Aetna were interpretations of the plan, and not modifications. *Id.* at 1285–86.

In *Straub v. Western Union Telegraph Co.*, 851 F.2d 1262 (10th Cir.1988), the Tenth Circuit held that promissory estoppel has no application to ERISA actions. *Straub* involved a dispute over pension benefits and the factual background is somewhat complicated. Plaintiff had been an employee of Western Union and participated in its pension plan. Plaintiff subsequently terminated his employment with Western Union and accepted employment with a subsidiary of Western Union, WUSCI. As a WUSCI employee plaintiff continued to participate in Western Union's pension plan. Western Union later sold half of its interest in WUSCI and WUSCI's name was changed to SpaceCom. Representatives of Western Union and SpaceCom held a meeting to explain to SpaceCom employees the effect of the corporate changes upon the pension plan. Specifi-

cally, the representatives informed SpaceCom employees that they would continue to participate in the pension plan in the same way as before the sale. Two years after this meeting, Western Union agreed during collective bargaining negotiations to increase pension benefits. SpaceCom did not follow suit. When plaintiff eventually applied for pension benefits and requested that he receive the increased amount agreed to by Western Union in collective bargaining negotiations with its employees, his request was denied. Plaintiff brought suit and asserted a federal common law claim for breach of an oral contract promising that his benefits with SpaceCom would be the same as if he were still employed by Western Union.

The Tenth Circuit held that plaintiff was not entitled to the increase. After noting that plaintiff was receiving the exact amount of benefits he was entitled to under the written plan, the court held that "no liability exits under ERISA for purported oral modifications of the terms of an employee benefit plan." *Straub*, 851 F.2d at 1265. The court noted that ERISA requires all plans to be in writing and held that the writing requirement precluded oral modifications or claims of estoppel. *Id.* The court cited the policy goal of protecting the interests of all employees and that allowing a single employee to unexpectedly increase his share of benefits could adversely affect the remaining participants of the plan. *Id.* The court also concluded that Supreme Court precedent indicates that the Court believes that Congress did not intend for implied rights of action to supplement ERISA's express provisions. *Id.* The Tenth Circuit concluded its opinion by stating that "ERISA's express requirement that the written terms of a benefit plan shall govern forecloses the argument the Congress intended for ERISA to incorporate state law notions of promissory estoppel." *Id.* at 1265–66.

*Williams v. Bridgestone/Firestone, Inc.*, 954 F.2d 1070 (5th Cir.1992), involved a dispute over disability benefits. Plaintiff began working for Bridgestone on April 25, 1983. In 1986, plaintiff injured his back in an automobile accident. By early April 1988, plaintiff's back condition had worsened and plain-

tiff elected to have non-emergency surgery on April 12, 1988, despite the fact that he knew the surgery could disable him. The surgery did in fact disable plaintiff and he never returned to work. Under Bridgestone's plan, if an employee had less than five years service with the company, medical benefits continued for two years from the date of disability. If an employee became disabled after he had accumulated five or more years of service, he would be eligible for benefits until his 65th birthday. Plaintiff claimed that although he was thirteen days short of five years when he became disabled, Bridgestone had a company custom and practice which allowed for accrued vacation time to be added on to actual service time to determine length of employment and eligibility for benefits. Plaintiff also alleged that before he decided to have the surgery his supervisor specifically reassured him that because of accrued vacation time he would be considered to have had more than five years of service as of the date of surgery. After plaintiff became disabled, Bridgestone informed plaintiff that he was thirteen days shy of five years service and, accordingly, he would receive benefits for only two years.

The Fifth Circuit began by explaining that while Congress intended federal courts to create federal common law when adjudicating ERISA disputes, the courts' authority extended only to areas that federal law preempts but does not address. *Id.* at 1072. The court noted that ERISA specifically requires plans to be in writing and establishes procedures for amending a written plan. *Id.* The court also noted that it had previously held that "Congress has addressed the question of amendment and we 'are not free to fashion federal common law that recognize[s] estoppel-based arguments.'" *Id.* at 1072–73 (quoting *Rodrigue v. Western and Southern Life Ins. Co.,* 948 F.2d 969, 971 (5th Cir. 1991)). The court then found that plaintiff was not attempting to use estoppel principles to modify the terms of the plan but rather to interpret terms of the plan, namely whether "five years" included accrued vacation time. 954 F.2d at 1073. The Fifth Circuit noted that the Eleventh Circuit in *Kane* allowed estoppel claims in such circumstances, but only if the terms of the plan were ambiguous.

*Id.* The court then concluded that it need not decide whether to adopt *Kane* or whether estoppel principles could apply under the circumstances of that case. The court held that the case involved the straight-forward issue whether, under the terms of the plan, "five years" included accrued vacation time and that a genuine issue of material fact existed on that issue. *Id.* at 1073–74.

Finally, the Eighth Circuit has directed the Court's attention to *Fitch v. Arkansas Blue Cross and Blue Shield,* 795 F.Supp. 904 (W.D.Ark.1992). In *Fitch,* plaintiff was insured under her employer's medical plan and although she ceased being employed in 1990, plaintiff elected to continue her coverage under COBRA. Plaintiff subsequently requested that her coverage be transferred to her husband's employer's plan with Arkansas Blue Cross and Blue Shield. While the change of coverage forms were processed, there was one month during which plaintiff had no coverage. Plaintiff subsequently filed several claims with Blue Cross in connection with carpal tunnel syndrome problems. Blue Cross claimed that it paid those claims by mistake. When plaintiff later had surgery for her carpal tunnel problem, Blue Cross denied payment on the grounds that it was a preexisting condition. Plaintiff brought suit arguing that Blue Cross should have been estopped from denying coverage.

The district court began by noting the disagreement among courts concerning the applicability of estoppel in ERISA actions. An extensive quote of the court's analysis is worthwhile:

> Although there is conflicting authority on this issue, the trend appears to be toward recognizing the applicability of estoppel principles.... Despite what appears to be the trend, the courts have been reluctant in the application of estoppel principles and have emphasized the need to protect the actuarial soundness of benefit plans and ERISA's requirement that plan provisions be in writing. It has been noted that the "policy behind the 'written instrument' clause in ERISA is to prevent collusive or fraudulent side agreements between employers and employees. But for the 'written instrument' clause, employees

[sic] could discriminate in favor of certain plan participants to the detriment of others." Serious doubts have been expressed over the extension of plan eligibility through estoppel and the courts have placed various limitations on the use of these principles.... Whatever the applicability of equitable estoppel claims in general under ERISA, the court believes equitable relief is proper under ERISA where the challenged actions do not involve alleged modifications of the plan.

*Id.* at 907–08 (citations omitted). The court held that the estoppel claim before the court did not involve an alleged oral modification of the terms of the plan and thus Blue Cross was estopped from denying benefits for plaintiff's surgery. *Id.* at 908–09.

Plaintiff states that the trend in ERISA actions is to allow estoppel claims. Plaintiff relies upon *Black v. TIC Investment Corp.*, 900 F.2d 112 (7th Cir.1990), which is cited for the proposition that if the pension plan involved is not a multi-employer plan, there is no good reason to go against the general rule that misrepresentations can give rise to estoppel claims. Defendant argues that although some courts have allowed estoppel claims to proceed in certain situations, those same courts have refused to allow such claims if they clearly contradict the express written terms of the plan or purport to modify the plan. Moreover, defendant argues, *Black* is distinguishable because the plaintiff in that case did not seek benefits beyond those provided under the terms of the plan but rather sought benefits that had been suspended after the employer entered bankruptcy.

■ The Court concludes that, under the circumstances of this case, an estoppel claim should not be allowed. First, the plan at issue is an employee pension plan and not a welfare-type plan. *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir.1990). If the Court were to allow plaintiff to receive a windfall based on defendant's miscalculations, the other participants in the plan are those most likely to suffer. *Black*, 900 F.2d at 115; *Straub v. Western Union Telegraph Co.*, 851 F.2d 1262 (10th Cir.1988); *Fitch v. Arkansas Blue Cross and Blue Shield*, 795

F.Supp. 904, 907–08 (W.D.Ark.1992). In other words, allowing plaintiff to receive increased benefits due to defendant's miscalculations could threaten the actuarial integrity to the plan. *Black*, 900 F.2d at 115.

■ Second, although plaintiff merely cites the general rule that estoppel principles apply to all legal actions and has not explained to the Court why estoppel should be allowed under the circumstances of this case, it appears that plaintiff is in effect arguing that defendant's representations resulted in a modification of the written plan's formula for calculating benefits. Because ERISA specifically addresses the procedure for amending a plan, estoppel cannot be employed to enlarge benefits available under the plan. *Miller v. Coastal Corp.*, 978 F.2d 622, 624 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 152 (1993) ("An employee benefit plan cannot be modified, however, by informal communications, regardless of whether those communications are oral or written." (citations omitted)). *See also Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 & n. 3 (11th Cir.), *cert. denied*, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). Estoppel can only be employed "when the terms of the plan are ambiguous *and* the communications constituted an interpretation of that ambiguity." *Fitch*, 795 F.Supp. at 907 (emphasis in original). *See also Kane*, 893 F.2d at 1285–86; *Straub*, 851 F.2d at 1265. Plaintiff has not alleged that the plan's terms were ambiguous or that defendant's communications constituted an interpretation of the plan. When the alleged misrepresentations flatly contradict the unambiguous language of the plan, an estoppel claim is not available. *Miller*, 978 F.2d at 625.

Finally, plaintiff's reliance on *Black* for the proposition that the policy concerns stated above are only relevant in multi-employer plans is unpersuasive. The *Black* court specifically stated:

In cases such as these where there is no danger that others associated with the Plan can be hurt, there is no good reason to breach the general rule that misrepresentations can give rise to an estoppel.... We hold, therefore, that estoppel principles are applicable to claims for benefits under

unfunded single-employer welfare benefit plans under ERISA. We express no opinion as to the application of estoppel principles in other situations.

900 F.2d at 115. The case at bar involves a pension plan, not a welfare benefit plan. Accordingly, there is a danger that others associated with the plan could be damaged if plaintiff's claim were allowed. In short, under the circumstances of this case the Court finds that plaintiff cannot state a federal common law estoppel claim.

### III. *Leave to Amend the Complaint*

Plaintiff argues that if his complaint is defective in some way, the Court should grant him leave to amend the complaint in order to state more clearly his claims under ERISA or federal common law. Defendant argues that plaintiff should not be allowed to amend his complaint because, under the circumstances of this case, it is not possible for him to state a claim upon which relief may be granted.

█ Whether to grant a plaintiff leave to amend a complaint is a matter within the discretion of the Court. *Butler v. City of North Little Rock, Arkansas*, 980 F.2d 501, 506 (8th Cir.1992). The Court will not grant plaintiff leave to amend his complaint. The problems with plaintiff's claims are not that the are inadequately pled. The Court has given plaintiff the benefit of the doubt and analyzed whether he has stated a claim under any legally cognizable theory. The Court has concluded that he has not and, thus, it would serve no purpose to allow him to amend the complaint.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

**IT IS ORDERED** that defendant's motion to dismiss is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**